The STATE of Texas, State,

v.

Clay Ashley KIBLER, Appellee.

No. 2–93–248–CR.

Court of Appeals of Texas,
Fort Worth.

April 12, 1994.

Tim Curry, Crim. Dist. Atty. Betty Marshall, Asst. Chief, Appellate Section, Charles M. Mallin, Asst. Chief, Appellate Section, David M. Curl, Asst. Crim. Dist. Atty., Fort Worth, for appellant.

Danny D. Burns, Fort Worth, for appellee.

Before WEAVER, HICKS and FARRAR, JJ.

## OPINION

WEAVER, Justice.

Appellee, Clay Ashley Kibler, was charged with possession of a controlled substance, namely amphetamine. Based upon a motion by appellee, the trial court entered an order suppressing evidence discovered during a search of a vehicle appellee was driving. We set aside the order suppressing the evidence and remand this cause to the trial court.

During a suppression hearing, Officer Bart Largent testified that he pulled appellee over for reckless driving on the evening of April 29, 1989. Appellee pulled into a gas station which stays open twenty-four hours a day. After obtaining appellee's license, Largent ran a routine check which revealed outstanding warrants for appellee's arrest. Largent arrested appellee and placed him in his patrol car. He then ran a registration check on the vehicle which revealed it was registered to someone other than appellee.

There was also a passenger in the car with appellee. The passenger identified himself to Largent by name, but Largent was unable to verify this information at that time because the passenger did not have any identification. Largent did use the name given by the passenger to run a routine check for outstanding warrants. Largent did not testify as to what this revealed, but the passenger was not arrested.

Largent proceeded to perform what he called his "routine duties" in order to impound and inventory the vehicle. When questioned as to why he did not just release the vehicle to the passenger, Largent testified that under department policy, any time a person in possession of a vehicle is arrested, the vehicle will be impounded unless it can be released to another person with a verified driver's license. Largent also testified during cross-examination that he did not recall appellee requesting to leave the car parked at the gas station, or asking the gas station attendant if it would be okay to do so. When Largent began his inventory of the vehicle pursuant to department policy, he found a cigarette package containing a suspected controlled substance.

■ Before we address any of the State's points of error concerning the trial court's decision, we must first address appellee's jurisdictional concerns. Appellee contends the State's notice of appeal was untimely filed and that this court is without jurisdiction to hear this appeal.

The hearing on appellee's motion to suppress was held on September 17, 1992, but the trial court did not decide the issue on that date. According to appellee, the trial court called both sides back into court on October 5, 1992, and announced the decision to suppress the evidence. Appellee alleges the trial judge signed an order granting his motion to suppress on that same date. The so-called "order" appellee refers to is his own two-page, typewritten motion to suppress. On the bottom of the second page of the motion, immediately following appellee's attorney's signature under the certificate of service, is a handwritten notation which reads: "Granted 10–5–92." The purported signature of the trial judge is immediately underneath this notation.

In addition to his claims that the trial court called both parties into court on October 5, 1992, to grant the motion to suppress, appellee alleges that the State was well aware of the purported October 5th order suppressing the evidence. The State disputes the claim that it was aware of the alleged October 5th order.

On May 11, 1993, the trial court signed a formal order granting appellee's motion to suppress. This order states in its closing paragraph that: "IT IS THEREFORE, ORDERED that the evidence seized pursuant to the search of the Defendant's motor vehicle on or about April 29, 1989 is suppressed and the product of the search is ordered excluded from evidence." The State subsequently filed its notice of appeal on May 19, 1993.

Appellee contends the notation on the bottom of his motion to suppress amounted to an appealable order, and that the appellate time table began running under Texas Rules of Appellate Procedure 41(b)(1). Rule 41(b)(1) reads in part as follows:

Appeal is perfected when notice of appeal is filed within thirty (*fifteen by the state*) days after the day sentence is im-

posed or suspended in open court or the day an appealable order is signed by the trial judge; ....

Tex.R.App.P. 41(b)(1). If appellee is correct that the notation and signature on his motion to suppress amounts to an appealable order, the State would have had to file its notice of appeal on or before October 20, 1992. However, the State contends the notation was not an appealable order, and that the only appealable order in this case is the one dated May 11, 1993. We agree.

Appellee is correct in his assertion that in order to be timely, the State must file its notice of appeal within fifteen days of the date the trial court signs the order. *See State ex rel. Sutton v. Bage,* 822 S.W.2d 55, 57 (Tex.Crim.App.1992); *State v. Rosenbaum,* 818 S.W.2d 398, 400–02 (Tex.Crim. App.1991). However, appellee has failed to direct us to any authority supporting his argument that the mere notation of "Granted" at the end of his motion to suppress, followed by a date and the purported signature of the trial judge, amounts to an appealable order.

Appellee contends both sides were present on October 5th when the trial court allegedly announced its decision to suppress the evidence, but there is nothing in the record to support this assertion. Even if this were true and the judge did announce this decision in open court, this pronouncement would not be final and appealable until the trial judge signed a written order. *Cf. Emerald Oaks Hotel v. Zardenetta,* 776 S.W.2d 577, 578 (Tex.1989) (trial court's oral pronouncement and docket entry reinstating a cause is not acceptable substitute for written order). Furthermore, as noted earlier, the State disputes appellee's contention that it was aware of the purported order of October 5th, and there is nothing in the record to the contrary.

We agree with the State that the notation on appellee's motion to suppress in the present case is similar to a situation where the trial court gives a preliminary indication that he plans to grant a defendant's requested relief. The State cannot appeal such preliminary rulings. *See State v. Kaiser,* 822 S.W.2d 697, 702 (Tex.App.–Fort Worth 1991,

pet. ref'd). Based on the specific facts of this case, we hold that the only appealable order signed by the trial judge is the one dated May 11, 1993. Therefore, the notice of appeal filed by the State on May 19, 1993, was timely and we have jurisdiction over this appeal.

■ We will now address the State's challenge of the trial court's order granting appellee's motion to suppress. The order granting appellee's motion reads in part as follows: "The Court specifically finds that the Defendant had permission of the owner to leave the lawfully parked motor vehicle in the parking lot of the gas station and grocery store and the seizure and subsequent inventory was unauthorized and illegal." This conclusion apparently relates to an implied finding that there was a reasonable alternative to impounding the car. *See Gords v. State,* 824 S.W.2d 785, 787–88 (Tex.App.— Dallas 1992, pet. ref'd) (impoundment is lawful only when no other reasonable alternative is available to insure protection of vehicle). In order for this rule of law to be applicable and an impoundment to be unlawful, there must be an affirmative showing of such a reasonable alternative. *See Mayberry v. State,* 830 S.W.2d 176, 180 (Tex.App.—Dallas 1992, pet. ref'd). In the present case there was no such affirmative showing.

The only evidence dealing with the possibility of leaving the car at the gas station occurred during the following exchange:

[APPELLEE'S ATTORNEY]: Now, when you stopped the car, the motor vehicle, it pulled up into—and pulled into a parking area of a gas station, did it not?

[LARGENT]: Yes, sir.

[APPELLEE'S ATTORNEY]: And do you recall [appellee] at some point requesting the car to remain there?

[LARGENT]: I don't recall that. No, sir.

[APPELLEE'S ATTORNEY]: You remember whether or not he asked the gas station attendant in your presence whether it would be okay to leave the car there rather than have it impounded?

[LARGENT]: No, sir, I don't recall that.

Thus, there is no evidence to support the trial court's stated reason for suppressing the evidence. The only other possible alternative to impounding the vehicle would have been to release it to the passenger. However, Largent could not do this because the passenger did not have a valid driver's license. *See Gords,* 824 S.W.2d at 788.

■ Furthermore, even if there were a reasonable alternative to impounding the car and the search of the car was not a valid inventory search, it would still be a valid search incident to arrest, as the State has alleged in point of error number three. In *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident to that arrest, search the passenger compartment of that automobile." *Id.* at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 775. In the present case, this is exactly what Officer Largent did. Thus, the search which produced the amphetamine was a valid search incident to appellee's arrest.

■ Although appellee does not contest the State's argument that the search was a valid search incident to arrest, appellee does contend that Largent did not demonstrate proper authority to stop and arrest him in the first place.[1] However, this contention is not supported by the record. Largent testified that he observed appellee pull in front of him coming close to his patrol car. Largent further testified that in his opinion this act amounted to reckless driving, and at the conclusion of the suppression hearing, the trial court expressly stated that "there's no question that the stop was legal."

Officer Largent clearly had reason to stop appellee for violations of traffic safety, and once he ran the warrant check on appellee, Largent had authority to lawfully arrest appellee. Although appellee originally contested the validity of the outstanding warrants for his arrest during the hearing on his mo-

tion to suppress, he has apparently abandoned this argument on appeal. Thus, under *Belton,* the search which produced the amphetamine was a valid search incident to appellee's lawful arrest. The State's third point of error is sustained.

Based upon our disposition of the State's third point of error, it is unnecessary to address its remaining points of error. The order suppressing the seized evidence is set aside and this cause is remanded to the trial court.

---

1. Although appellee's reply point alleges that Officer Largent did not demonstrate authority to stop *and arrest* appellee, the only argument appellee presents under the reply point is that Largent did not have reason to *stop* him. During

the hearing on his motion to suppress, appellant did contest the validity of the outstanding warrants which lead to his arrest. However, appellee has not contested the validity of these warrants in this appeal.